José de Gracia, Plaintiff and Appellee, *v.* Gerardo Guardiola, Defendant and Appellant.—José De Gracia, Plaintiff and Appellant, *v.* Gerardo Guardiola, Defendant and Appellee.

Nos. 4299 and 4276.   Argued December 16, 1927.—Decided March 8, 1928.

*F. Soto Gras* for the defendant-appellant. *Blondet* and *Campillo* for the plaintiff-appellant.

Mr. Justice Wolf delivered the opinion of the court.

From the evidence in this case the court had a right to believe that José de Gracia was injured by reason of a jitney coming so close to the limit of the street-bed as to cause the body of the vehicle to protrude over the sidewalk whereon the said José de Gracia was walking. The court decided in favor of the plaintiff and rendered judgment for him in the sum of $10,000 and both sides have appealed.

Despite the comments of the Circuit Court of Appeals and of this court, the attorneys have brought up two separate records, when one would have sufficed.

We take it that the theory of negligence in this case was

that, despite the narrow street on which the accident happened, the jitney was under a duty so to proceed on its way as not to injure any one on the sidewalk. In other words, that it was negligence to permit the body of the car to jut over on the sidewalk. There was a trolley-car ahead, according to the preponderance of the evidence, and the court apparently believed that the jitney attempted to pass the car on the right. We agree with the defendant-appellant that there was room for both vehicles on Salvador Brau Street in front of the Cafetera, and this is so true that the defendant has shown us no reason for traveling so close to the sidewalk as the evidence tended to show. Even if the trolley was coming up from the rear, as stated by some of the witnesses for the defendant, there still was no reason for crowding so far over to the right as to cause the body of the jitney to penetrate upon the sidewalk. No emergency was shown to justify this penetration.

We agree with the defendant-appellant that no other negligence was shown than the one we have described. He does not challenge this theory of negligence, but maintains that the proximate cause of the accident was the plaintiff's stepping off from the sidewalk into the street. On this point there was a conflict which the court decided adversely to the defendant on a review, satisfactory to us, of the evidence. The preponderance thereof was in favor of the plaintiff. Hence, there was no contributory negligence on his part. Even if the plaintiff had stepped down into the street, the defendant has failed to satisfy us that such an act was necessarily negligence. It might have been negligence, but the defendant was bound to show that in point of fact it was so. If the jitney had not come so close stepping down into the street from the sidewalk might have had no serious consequences. These considerations dispose of the first two assignments of error.

The third assignment has regard to the refusal of the

court to admit a writing contradicting the testimony of a particular witness. We are quite agreed with the defendant that a writing identified upon the cross-examination of a witness need not be offered in evidence at the time that the cross-examination is made, and might be reserved for the defendant's own case, but the court did not hold otherwise. It merely decided that the writing was not in any way competent evidence to contradict unless it was shown to the witness and he was given a chance to explain it, as provided by section 159 of the Law of Evidence.

Error is assigned in fixing the damages at $10,000, but as the defendant does not discuss this question, we find no reason for disturbing the judgment of the court in this regard.

The fifth assignment of error goes to the question of costs and fees. We are of the opinion that an investigation on the part of the defendant should have convinced him that there was no real defense and that therefore the court's discretion in imposing costs and fees was not improperly exercised.

The appeal of the plaintiff is quite extraordinary. He maintains that the judgment for $10,000 is entirely inadequate and that the court should have given him at least the sum of $26,000. At the hearing of this case we asked counsel for the plaintiff if he had been able to find any case in which an appellate court in the United States had similarly increased the judgment of a court below, or in any degree. We understood counsel to say that cases were cited, but we have found none in the brief. The ordinary explanation to our question is that in the United States the amount of damages must ordinarily be left to a jury and an appellate court has no right to increase the amount. Plaintiff-appellant does say, however, that in the United States verdicts or judgments for larger amounts are generally given when the plaintiff claims practically a total incapacity, as in this case.

The plaintiff was a sergeant in the United States Army. He was earning $116 a month and in a few years would have been able to retire on a pension of $114. He calculated that from his present age of 48 to his retirement age at 54 he would have received over $8,000. Then the plaintiff says that his expectation of life was 13 years more, and for that period the total amount to be paid him would be over $18,000.

The idea of the law is compensation, and to put the plaintiff more or less in a similar position to that in which he would have been if the accident had not happened to him. There is no idea of bettering his position. It is not unusual in Porto Rico to obtain 10 per cent on investments. $26,000 so invested would produce $2,600 a year, which would be about twice as much as the plaintiff was earning. Not only is this true, but the plaintiff at the end of the 19 years would still have the $26,000, whereas if he was receiving a regular salary he would have probably spent it all and have little or nothing left. The best way to consider this matter is to imagine a sinking fund or the amortization of a debt, namely, to start with a certain fund, add the interest to it and then let the yearly outlay be deducted in such a way that the whole capital and interest would be eventually absorbed and leave practically nothing at the end of a particular period designated, e. g., the nineteen years of expectancy spoken of by plaintiff. $10,000 so invested would not come far from giving the plaintiff more or less, year by year, the same amount that he had been receiving as sergeant from the United States. The plaintiff testified that, by reason of his incapacity, he was only able to earn about $8 or $10 a month, but we are not so sure that he might not be able from time to time to earn a little more. Likewise the evidence tended to show that he had a chance to obtain a pension from the United States for his disability.

Under all the circumstances we see no reason to interfere

with the discretion of the court in fixing the damages at $10,000.

The judgment should be affirmed in each case.

### ON RECONSIDERATION

This is a motion for reconsideration. The case was originally set for hearing on the 16th of December, 1927. Due to the fact that there were only four judges composing the court and as our calendar was more than usually over-crowded, we postponed, along with other cases, the hearing of the appeal. On motion for reconsideration presented by the attorneys for the complainant we reset the case for its original date of December 16, 1927. The resetting was duly notified to the appellant. No one appeared for the defendant and appellant at the hearing. Counsel for appellant complained that the motion for a resetting was not notified to himself or his client. Nevertheless the hearing was so notified and that was all that was necessary. It is possibly a little more than necessary, as the action of the secretary of this court in notifying the settings is a courtesy and not a duty. Counsel, as officers of the court, are bound to know the settings of their appeals.

The notice from this court was sent out on the 29th of November, 1927. Settings and resettings are made by this court of its own motion or perhaps *ex parte*. It should be noticed that the original order of this court postponing the date was made on its own motion. Appellant had ample time between the 29th of November and the 16th of December to ask for a different setting. It is true that particular counsel was absent, but the court can take no notice of absences and there is no complaint that the notice did not reach the office of counsel, as customary. We see nothing in all this other than the failure of the associate or associates of counsel to appear. This failure is chargeable to counsel in the same way as the failure is chargeable to the client.

We might order a rehearing and take the situation of counsel into consideration if we had doubts of the disposition of this case. We have none. After various suggestions that this court failed to give due attention to his brief, counsel necessarily concedes that the principal matter before the court was the question of fact, namely, whether the complainant who was struck by the jitney of the defendant did or did not abandon the sidewalk. The court below made a general and ultimate finding that the complainant was on the sidewalk when he was struck. In affirming the general finding of the court below our principal holding turned on that point. Appellant insisted in his brief and insists in his motion for reconsideration that the complainant did step down into the bed of the street. Counsel complains of the comment in our opinion that he had not attacked the theory of negligence. His so-called attack principally is to insist again that the complainant left the sidewalk. Generally where the case turns on a conflict in the evidence and the upshot of the appellant's contention is that his witnesses rather than those of the other side are to be believed, we do not find it necessary to analyze the evidence of the witnesses one by one.

Some time ago in the case of *Muñiz v. Cortés,* 36 P.R.R. 161, we said something to the effect that if the finding of the court below had been the opposite we should not have disturbed it. This is the comment that we frequently make in our opinions or in our discussions. In that case we analyzed the evidence to a small extent. The United States Circuit Court of Appeals, in affirming our judgment, said that we had reached our conclusion rather haltingly. In point of fact the case followed the principle so frequently announced by us that in the absence of a showing of passion, partiality, prejudice or grave error this court will not disturb the finding of the trial court. The present appeal might be decided solely on the same principle, but we go further and

say that from the evidence we do not see how the court could have arrived at any different conclusion. At the risk of repetition, it may be said that this was the *ratio decidendi* of our opinion in opposition to the contentions of the appellant. Anything said with reference to contributory negligence was mere *obiter*. In the brief of the appellant there was no such analysis of the evidence of the witnesses as to cause us to doubt. If we review the evidence now more in detail it is an attempt to remove the impression that might be produced if so distinguished a counsel should insist tnat the court had not heeded his brief.

Besides the complainant himself, there were five eye-witnesses of the accident who testified for him. Each one of them said that the complainant was on the sidewalk and he said it clearly. Some of them were not even cross-examined on this point, and one of them was not cross-examined at all. Particular statements of the witnesses can be found on pages 26, 62, 65, 72 and 79 of the typewritten record, if not elsewhere.

There were three witnesses for the defendant who said that the complainant stepped off into the street. The number of witnesses of course does not determine the preponderance of the evidence, but it struck us that complainant's witnesses as a whole were in a better position to judge of the accident than the defendant's witnesses. One of the witnesses of the defendant was a policeman, seated in the jitney that caused the accident. From his testimony and position we do not see how he could be certain that the complainant stepped off into the street. The jitney did not strike the complainant with the fore part of the vehicle, but with its side. The complainant, from the uncontradicted evidence, was found after he was struck with part of his body on the sidewalk and his legs in the street. After an accident the most honest witnesses can have an erroneous impression because of what happened immediately afterward.

The witnesses of the complainant were better. They were all on the sidewalk and their chances of observation were good. Three of them were well-known lawyers. Only one of them was impugned and it may be said solely on the ground of his interest in this case. He was one of the attorneys for the complainant. Along with many other courts, we desire to intimate that a lawyer should avoid being a witness in a case where he appears as counsel. The English courts are particularly strong on this point. In this case, however, there was no reason to suspect the accuracy of the witness, as an examination of the record will show. There were two other witnesses besides the complainant, all of them tending to prove that the complainant was actually on the sidewalk when he was struck. While one of these witnesses may have been a little uncertain in his testimony, the court had a complete right to believe him when he described the accident. The witness insisted that despite the fact that the complainant was yielding space for a lady to pass he did not leave the sidewalk.

If in this summary outline we have possibly overstressed the weight of some of the witnesses' testimony, the court below had a right (as it appears to us from the record) to do this and even more, as it had the witnesses before it. That is why, as the court had made a general and ultimate finding, we limited ourselves in our original opinion to saying that the court below had made an examination of the evidence satisfactory to us. Reviewing that opinion in the light of subsequent experience, we do not find it at all inadequate. In our opinion we said:

"We agree with the defendant-appellant that no other negligence was shown than the one we have described. He does not challenge this theory of negligence, but maintains that the proximate cause of the accident was the plaintiff's stepping off from the sidewalk into the street. On this point there was a conflict which the court decided adversely to the defendant on a review, satisfactory to us, of the evidence. The preponderance thereof was in favor of the

plaintiff. Hence, there was no contributory negligence on his part. Even if the plaintiff had stepped down into the street, the defendant has failed to satisfy us that such an act was necessarily negligence. It might have been negligence, but the defendant was bound to show that in point of fact it was so. If the jitney had not come so close stepping down into the street from the sidewalk might have had no serious consequences. These considerations dispose of the first two assignments of error.''

The words ''even if the plaintiff had stepped down,'' etc., should have been placed in a separate paragraph. They were, however, mere *obiter*. While we think we could justify our suggestion that a man putting one foot into the street might not constitute contributory negligence, the discussion of the question is totally unnecessary, as the fact found is that the complainant did not so step down.

In his motion the appellant implies that just as pedestrians have a full right to the sidewalk, a vehicle has full right to the street. If the appellant means by this that under any conditions the driver of a vehicle has a right to bring his wheels to the edge of the sidewalk, then he is clearly in error. The fundamental principle of the substantive law is *sic utere tuo ut alienum non laedas*. No driver has a right to introduce any part of the body of his car over onto the sidewalk if by so doing he injures another person, barring perhaps cases of emergency, as suggested in our original opinion. The court found that the body of the car did jut out over the sidewalk. A little of the jitney, six or nine inches perhaps, or may be sometimes a little more, extends beyond the wheels. The driver of a vehicle must avoid that this part juts over the sidewalk. One of the witnesses, Mr. Lastra Charriez, thought that the jitney would strike him, and the whole evidence tends to show that the jitney was as close to the sidewalk as it was possible for it to go without the wheels actually going on the sidewalk. This was the negligence we found in the record, although not actually discussed in these terms in the opinion of the court below. If the apparent

contention of the defendant is sound, then a lumber wagon or a furniture wagon could allow its lumber or its furniture to molest the pedestrians on the sidewalk. The testimony shows that the street itself is nineteen feet wide; that there is a distance of eleven feet from the sidewalk to the rail of the street car. The defendant had ample room to move his vehicle on this one-way street. There is some possibility that the defendant's driver was anxious to get by the street car while it was stopping, but the duty of every driver is to wait if necessary so as to injure no one on the sidewalk. The latter is three feet wide; the whole distance from house to house is twenty-five feet. Traffic is crowded and nowhere more than at the point and the hour when the accident happened, namely, twelve noon. Drivers must take extraordinary care in this narrow and crowded street not to injure a pedestrian. When anyone walking on the sidewalk is struck by a passing jitney the inference is inevitable that the jitney was, under the conditions of the traffic, in a spot where it had no right to be. This is in essence the holding of the trial court.

It was probably mentioned for another purpose, but there is nothing in the suggestion that either court was moved by the fact that the complainant was a soldier in the service of the United States.

The question of damages was not discussed in the brief of the appellant and defendant. It is true that in the statement of the case defendant said that he would discuss this point in his brief answering the contentions of the complainant who had also appealed on the matter of damages. Now again in his motion for reconsideration the appellant refers us back to the previous motion that he had filed. Needless to say the place to discuss the errors assigned by an appellant is in his brief as appellant. Entering slightly into the matter of damages, some of the members of the court might have doubts whether the damages were not somewhat exces-

sive, but the majority has a different opinion and none of us would be disposed to intervene in the discretion of the trial court if the amount of the damages were slightly excessive. Going to case No. 4276 we find that the defendant never answered the brief of the complainant and a motion for a reconsideration is too late to raise the questions that the appellant proposed to raise.

The appellant also complains of the imposition of costs. We were of the opinion that an investigation on the part of the defendant should have convinced him that there was no real defense and that therefore the court's discretion imposing costs and fees was not improperly exercised. Our opinion was and still is that an examination of the facts by this defendant should have convinced him that the complainant never left the sidewalk. We think it was quite possible for the defendant to have ascertained this fact. Nevertheless we did not mean to limit the matter of the imposition of costs against the defendant to the sole possibility of his being able to discover the actual facts. If it turns out that the defendant was really negligent, the court in its discretion has a right to impose costs on the defendant, considering the degree of blame. Otherwise in a vast number of cases costs could never be imposed upon a defendant where the complainant was totally blameless. We do not care to overstress the point, but if the defendant insists that he has a right to run his wheels up to the edge of the sidewalk, where persons are walking or standing, even if the body of the car protrudes thereover and he did so upon that theory, then he is to a large extent blameworthy. It is unnecessary, therefore, for us to discuss to any great extent what we have done in other cases. The case of *Josefa Candal de López* v. *Sociedad Española de Auxilio Mutuo y Beneficencia,* decided on March 16, 1928, was most exceptional. We made it clear in our opinion that it was such an exceptional case and it can not be resorted to as a precedent for the present situa-

tion in which the court below and this court find the defendant blameworthy.

The motion for reconsideration will be denied.